**Edward A. DOSEK, Appellant,**

v.

**UNITED STATES of America, Appellee.**

**No. 19103.**

United States Court of Appeals
Eighth Circuit.

Dec. 30, 1968.

Clayton H. Shrout, Omaha, Neb., for appellant and filed brief.

Theodore L. Richling, U. S. Atty., Omaha, Neb., for appellee and filed brief; Arthur F. Mathews and Larry B. Grimes, United States Securities and Exchange Commission, Washington, D. C., were on the brief with Theodore L. Richling, Omaha, Neb.

Before VAN OOSTERHOUT, Chief Judge, and GIBSON and BRIGHT, Circuit Judges.

VAN OOSTERHOUT, Chief Judge.

This is a timely appeal by defendant Edward A. Dosek from his conviction by a jury on each of nine counts of an indictment and the resulting sentence. Counts I to VI, inclusive, charged that defendant did by use of the mails in the offer and sale of securities to named individuals unlawfully, willfully and knowingly employ a scheme to defraud and obtain money and property, in violation of 15 U.S.C.A. §§ 77q(a) and 77x. Counts VII to IX charge separate uses of the mail in pursuance of a fraudulent scheme to sell securities in violation of 18 U.S.C.A. § 1341. Defendant was given concurrent sentences of three years on Counts I, II, III, IV, V, VII and VIII. He was placed on probation on Counts VI and IX for a period of five years commencing with the expiration of the sentence on the remaining counts.

Defendant asserts he is entitled to a reversal based upon erroneous rulings of the trial court in the following respects:

I. Denial of his motion for acquittal made at the close of all the evidence because, (a) all evidence predicated upon the investigation of the Securities and Exchange Commission's inquiries of August 4, September 8, and September 29, 1965, should have been excluded; (b) Government claims of fraudulent misrepresentation were not proven.

II. Denial of Motion for change of venue.

III. Admission in evidence of Exhibits 73 and 74 and testimony relating thereto.

IV. Refusal to exclude Government's testimony predicated on bank records obtained without court order.

V. Denial of motion for new trial based on recantation of testimony of Government's witness Rerucha.

A careful examination of the record satisfies us that no prejudicial error was committed at defendant's trial and that the conviction should be affirmed. We shall discuss defendant's contentions in the order in which they are above stated.

## I.

█ Defendant's contention that the court erred in denying his motion for acquittal is predicated upon defendant's insistence that the Government's case is largely based upon testimony given and papers produced by him at SEC investigation hearings held at Denver on August 4, September 8, and September 29, 1965, and that such information was obtained in violation of defendant's constitutional rights established in Miranda v. Arizona, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694. In essence, Dosek claims: (1) that he was involuntarily "in custody" when he was questioned by the SEC, and that consequently the failure of the SEC officers to apprise him of a "right to silence" *in haec verba* as set out in Miranda v. Arizona, supra, transformed an otherwise valid administrative inquiry into an illegal and unconstitutional interrogation; (2) that he had a right to be informed *in haec verba* that he could "refuse to surrender the documents and records" subpoenaed, and that the failure to so apprise him constituted a grant of immunity to him; (3) that he had a right to be advised that counsel would be appointed for him if he so desired; (4) that the warning given to him was unduly vague and indefinite and consequently ineffective; and in any event (5) he was incapable of intelligently and effectively waiving his constitutional rights because he was "psychotic", a "manic-depressive, manic type", and was undergoing psychiatric treatment for such mental ailments during the time period involved.

We find all of such contentions lack merit. The August 4, 1965 hearing, was held some ten months before Miranda was decided by the Supreme Court. Defendant appeared pursuant to subpoena authorized by statute. The hearing was originally scheduled for Lincoln but at defendant's request the hearing was held at Denver. Defendant had ample advance notice of the hearing and appeared at the hearing without counsel. Before being asked any questions, defendant was advised that the investigation was being conducted by the SEC to ascertain whether the defendant had violated designated provisions of the Securities and Exchange Act and defendant was told "this investigation could possibly reveal violations of other Federal statutes, as well as those that we have just alluded to. Under the Commission's practice it is our duty, as you are possibly aware, to advise you that you can be represented by an attorney of your choice, and that any evidence you give can be used against you at a later date. And you may refuse to give any testimony or answer any questions, or give any evidence which may tend to incriminate or degrade you, or subject you to a fine, penalty or forfeiture." The defendant indicated that he was prepared to proceed.

The record shows that defendant had considerable business experience and that he had studied law rather extensively but had not been admitted to the bar.

Defendant was not in custody on any of the occasions when his testimony was taken before the SEC investigators. No coercion was practiced upon him. At the hearings subsequent to the August 4 hearing, defendant was represented by counsel and at such hearings additional books and records which had been requested by the SEC were produced without objection, and further interrogation took place.

In Cohen v. United States, 8 Cir., 405 F.2d 34, we held that the failure of the Internal Revenue Agents who were investigating the defendant's tax liability

to give a Miranda warning did not render the information obtained inadmissible, and that no violation of the defendant's constitutional rights was established. We reviewed the pertinent authorities bearing upon the issue. The reasoning upon which the *Cohen* decision is based, in our view, fully applies to our present situation. Here, as in *Cohen,* there is nothing to indicate that the agents obtained the information by the use of coercion, fraud or misrepresentation. See Muse v. United States, 8 Cir., 405 F.2d 40; White v. United States, 8 Cir., 395 F.2d 170.

■ Defendant admits that he understood the warning given but claims his judgment was impaired by mental illness. There is evidence that the defendant had some mental illness a number of years before the events here material and again shortly after the interviews. The evidence, including the record of defendant's testimony on the mental competency issue, is such as to leave room for the trial court's determination that the evidence given by the defendant at the hearings was voluntarily given.

■ Defendant devotes less than one page of his brief in support of his claim that the fraudulent misrepresentations were not proven. He sets forth no convincing facts nor law to support his contention. Under such circumstances, an extensive review of the voluminous evidence would appear to serve little purpose. Our examination of the record leaves no doubt in our mind that there is ample evidence of the fraudulent scheme to require the submission of such issue to the jury. It is quite true that defendant offered contradictory evidence and denied fraudulent intent. The jury, as it had a right to do, accepted the Government's evidence on the fraudulent scheme issue. In determining the sufficiency of the evidence to justify an inference of fraudulent intent and bad purpose, we must of course view the evidence in the light most favorable to the prevailing party, here the Government. Elbel v. United States, 10 Cir., 364 F.2d 127; Koolish v. United States,

8 Cir., 340 F.2d 513, 519; Isaacs v. United States, 8 Cir., 301 F.2d 706, 726–727. When the evidence before us is so viewed, we have no doubt as to its sufficiency to support the guilty verdict.

## II.

■ Defendant has fallen far short of establishing error in the denial of his motion for change of venue based upon prejudicial publicity. Seven newspaper publications are offered in support of the motion. Four of the publications were made in 1965. They contain a recitation of the allegations made by the SEC in a complaint for civil injunctive relief which preceded the indictment. Two articles published in separate papers in 1966 recite the return of the indictment upon which defendant was subsequently tried. The most recent article, published in the Lincoln Journal on April 1, 1967, recites that defendant was arraigned on the indictment and that he entered a plea of not guilty to each count; that the trial would soon be held, and that a civil action previously commenced by the SEC resulted in enjoining the defendant from selling Securities Investors stock. The articles are largely factual reports of proceedings against the defendant and are barren of inflammatory matter. Defendant's trial commenced on July 31, 1967, approximately four months after the latest publication.

■ The disposition by a judge of a change of venue motion rests largely in the discretion of the trial court who is the one most familiar with the local situation, and a trial court's ruling upon such a motion will be upset only for a clear abuse of discretion. Koolish v. United States, 8 Cir., 340 F.2d 513, 527; Connelly v. United States, 8 Cir., 249 F. 2d 576, 584–585; United States v. Moran, 2 Cir., 236 F.2d 361, 362. The publicity here involved is in no way comparable to that in Sheppard v. Maxwell, 384 U.S. 333, 86 S.Ct. 1507, 16 L.Ed.2d 600, relied upon by the defendant.

Defendant makes a vague claim that some jurors admitted reading the news-

paper stories. The record does not show the voir dire examination. Defendant has not charged and certainly has not proven that any juror challenged for cause on valid grounds was not excused.

The defendant has failed to establish that the trial court abused its discretion in denying the motion for change of venue.

### III.

■ Ralph DeWald, the Count IV victim of a fraudulent stock sale, after purchasing Securities Investors stock subsequently loaned defendant $8,000 evidenced by a note, Exhibit 74. The check disbursing the proceeds of the loan is Exhibit 73. Such exhibits and testimony relating thereto were received in evidence over defendant's objection based on relevancy and materiality. After hearing from counsel extensively, the testimony was admitted. The record includes a letter from the defendant and DeWald's testimony that the loan was made for the purpose of aiding Securities Investors to purchase an insurance company, and that the loan proceeds were not used for that purpose. Acquisition of insurance companies was represented by the defendant to be one of the prime objectives of Securities Investors. The evidence relating to the loan has a bearing on the scope and extent of the fraudulent scheme. In Hartzell v. United States, 8 Cir., 72 F.2d 569, 584, a mail fraud case, we held:

> "In prosecutions of this character, great latitude is allowed in the introduction in evidence of attending circumstances. Smith v. United States (C.C.A. 8) 267 F. 665. 'The competency of a collateral fact to be used as the basis of legitimate argument is not to be determined by the conclusiveness of the inferences it may afford in reference to the litigated fact. It is enough if these may tend, even in a slight degree, to elucidate the inquiry, or to assist, though remotely, to a determination probably founded in truth.' Williamson v. United States, 207 U.S. 425, 28 S.Ct. 163, 172, 52 L.

Ed. 278. False statements outside the scheme charged are competent to show the defendant's fraudulent intent. Busch v. United States (C.C.A. 8) 52 F.2d 79; United States v. Sprinkle (C.C.A. 2) 57 F.2d 968; Vause v. United States (C.C.A. 2) 53 F.2d 346. The evidence admissible to establish the scheme and the intent may be extensive in scope and rests largely within the discretion of the trial judge. These admissions tended to show the nature of the scheme, the falsity of the representations, and the knowledge and intent of the defendant."

To like effect, see Llanos v. United States, 9 Cir., 206 F.2d 852, 855; Suetter v. United States, 9 Cir., 140 F.2d 103, 107.

In any event, the evidence in support of the fraudulent scheme is strong. Defendant's argument on prejudicial error is brief and weak.

Defendant has not established that any prejudicial error was committed in receiving Exhibits 73 and 74 and the testimony relating thereto.

### IV.

■ There is no merit to defendant's contention that the bank records of Dosek Bonding and Insurance Company produced by the banks were illegally seized and hence, that the evidence obtained should be suppressed. The issuance of subpoenas is expressly authorized by 15 U.S.C.A. § 78u(b). Such subpoenas were issued to the banks. The records supplied by the banks were records belonging to the banks, not to the defendant. Defendant has no standing to assert Fourth and Fifth Amendment rights with respect to the banks' records. Galbraith v. United States, 10 Cir., 387 F.2d 617, 618; see Elbel v. United States, 10 Cir., 364 F.2d 127; Application of Cole, 2 Cir., 342 F.2d 5, 8.

### V.

■ Lastly, defendant contends that the trial court abused its discretion in

denying his motion for a new trial based upon the ground that the Government witness Rerucha recanted his testimony. Defendant had testified that he was ill during most of 1966 and was confined by reason thereof to his home or a hospital and that he was unable to carry on business activities. Rerucha on rebuttal testified that defendant sold him Securities Investors stock in July 1966. On surrebuttal defendant testified that Rerucha was mistaken and that he sold him stock in another company. The trial court held a full evidentiary hearing on the recantation issue. There is record evidence that defendant after his conviction went to Rerucha and cried and pleaded with him to change his testimony to show that the stock he purchased was not Securities Investors. Rerucha signed an affidavit prepared by the defendant so stating. Rerucha's testimony is somewhat confusing and contradictory and tends to show that he initially believed the stock he had purchased was Securities Investors, but that the defendant had persuaded him that he might possibly be mistaken. Rerucha reaffirmed that the testimony given at the trial was true.

In Johnson v. United States, 8 Cir., 291 F.2d 150, 154, we stated the applicable law as follows:

> "Courts look upon recantation with suspicion. The trial court, which has had the witness before it, is in a much better position to determine where the truth lies than an appellate court. An appellate court should not interfere with the trial court's findings which have evidentiary support. Motions for new trial based upon factual considerations should not be tried de novo upon appeal. United States v. Johnson, 327 U.S. 106, 111–113, 66 S.Ct. 464, 90 L.Ed. 562; Connelly v. United States, 8 Cir., 271 F.2d 333; United States v. Smith, 7 Cir., 253 F.2d 95, 98; Newman v. United States, 5 Cir., 238 F.2d 861, 863; Jencks v. United States, 5 Cir., 226 F.2d 553, 555."

In any event regardless of what stock was sold by defendant to Rerucha, his testimony contradicts defendant's testimony that he was unable to do any business in 1966 and it is very unlikely that the name of the stock which defendant unloaded on Rerucha would have any substantial effect upon the jury verdict.

We hold that defendant has failed to establish that the court committed error or abused its discretion in denying the motion for a new trial.

To summarize, we find that the court committed no error prejudicial to the defendant and that the defendant had a fair trial.

The judgment is affirmed.